BALMORAL RACING CLUB, INC., *et al.*, Plaintiffs-Appellees, v. THE IL-LINOIS RACING BOARD *et al.*, Defendants-Appellants (Balmoral Park Trot, Inc., *et al.*, Defendants).

Third District   Nos. 3—91—0187, 3—91—0230 cons.

Opinion filed May 30, 1991.

Roland W. Burris, Attorney General, of Springfield (Paula Giroux and Rosalyn B. Kaplan, Assistant Attorneys General, of Chicago, of counsel), for appellant Illinois Racing Board.

Scott J. Szala, Frank H. Langrock, and Darcy J. Bogenrief, all of Winston & Strawn, of Chicago (Dan K. Webb, of counsel), for appellants Arlington Park Racetrack, Ltd., and Washington Park Thoroughbred Racetrack, Ltd.

Edward M. White, of Carey, Filter, White & Boland, of Chicago, for appellant Hawthorne Race Course, Inc.

Thomas Feehan, of Rooks, Pitts & Poust, of Joliet, and Jeremiah Marsh, E. Glenn Rippie, and Robert R. Hall, Jr., all of Hopkins & Sutter, of Chicago (William J. McKenna, Jr., of counsel), for appellee Balmoral Racing Club.

Arthur Edward Engelland and Angela Riccio, both of Chicago, for appellee Horsemen's Benevolent & Protective Association, Inc.

JUSTICE BARRY delivered the opinion of the court:

This is an appeal from an order of circuit court of Will County which reversed an order of the Illinois Racing Board (Board) insofar as the Board denied thoroughbred horse racing dates to Balmoral Racing Club, Inc., for 1991 and which remanded this cause to the Board with directions to award 62 thoroughbred dates between May 12 and December 30, 1991, to Balmoral. We reverse the order of the circuit court and reinstate the order of the Illinois Racing Board.

The Board conducted hearings on September 18, 1990, concerning the applications for thoroughbred and harness racing dates for 1991. In addition to receiving sworn testimony from each of the applicants, the Board also admitted into evidence all of the applications for racing dates, orders setting dates, and annual reports of the Board for the past five years along with staff reports, summaries, and correspondence. The Board issued a 22-page order allotting racing dates to all applicants and imposing certain conditions upon the various licensees.

In 1990 Balmoral had been awarded thoroughbred dates from May 13 to October 2, overlapping the dates of May 9 to October 8 awarded to Arlington. Other tracks in the Chicago area (Hawthorne and Sportman's) were awarded thoroughbred racing dates that did not conflict with either Arlington or Balmoral. The latter two tracks are approximately 63 miles from one another. For 1991 the Board awarded Arlington the dates of May 12 to October 9 while again allotting noncompeting dates to Hawthorne and Sportman's. This year, however, the Board denied Balmoral any thoroughbred dates and instead awarded Balmoral harness racing dates throughout the entire year. (Racing dates were also awarded at Ogden-Fairmount, Quad City Downs and Maywood Park, but none of those awards are involved in this appeal.)

In its order the Board found that the experience of the previous two racing years demonstrated that the three Cook County thoroughbred racetracks (Sportsman's, Arlington, and Hawthorne) needed un-

opposed race meetings in order to maximize State revenue, due in large part to the inadequate supply of horses available for thoroughbred racing in Illinois. The Board stated:

"Based upon staff analysis and our own expertise and experience, we believe that state revenue will be enhanced by eliminating thoroughbred racing at Balmoral, granting thoroughbred market exclusivity and providing harness racing two days per week at Balmoral during the summer of 1991. Harness horses in Illinois are sufficient in number and race with enough frequency to completely avoid the problems associated with concurrent thoroughbred meets."

Balmoral filed an administrative review proceeding in the Will County circuit court and obtained a reversal of the denial of thoroughbred racing dates at Balmoral. In support of its judgment order, the court made a finding that the public interest in maximizing State revenue "has no relationship as to whether thoroughbred horseracing programs are run concurrently or not" and held that there was no evidence to support the Board's finding that excluding Balmoral Park from thoroughbred racing in 1991 would be in the best interest of the public or the sport of horse racing. The court also found that the Board's finding of an insufficient number of horses available for concurrent racing at Balmoral and Cook County tracks was contrary to the manifest weight of the evidence and that section 21(c) of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1989, ch. 8, par. 37—1 et seq.) restricts "parochial exclusivity to licensees within 35 miles of each other" and thereby evidences a legislative intent "that competition between Balmoral and the Cook County tracks more than 35 miles away to be in the best interest of the public and the sport of horseracing."

The trial court also ruled that the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1989, ch. 127, par. 1001 et seq.) is applicable to proceedings of the Illinois Racing Board to award racing dates and that the Board acted in violation of that act so as to deprive Balmoral of its rights to procedural due process. However, the court also found that Balmoral had waived its rights under that act by failing to object during the hearing before the Board and by continued participation in those proceedings.

In addition to reversing the denial of racing dates to Balmoral, the trial court remanded the cause to the Illinois Racing Board with directions to award 62 thoroughbred racing dates for 1991 between May 12 and December 30, 1991, to Balmoral to be held on consecutive Sunday evenings, Mondays and Tuesdays.

Three parties have appealed from the decision of the trial court: Arlington Park Racetrack, Inc., the Illinois Racing Board, and Hawthorne Race Course, Inc. Arlington and the Board present the same basic arguments.

We first consider the court's ruling that section 21(c) of the Illinois Horse Racing Act was intended by the legislature to limit the Board's authority to grant exclusive dates to tracks within 35 miles of each other and, furthermore, that the legislature intended that competition between Balmoral and Cook County tracks more than 35 miles away would be in the best interest of the public and the sport of horse racing.

Section 21(c) (Ill. Rev. Stat. 1989, ch. 8, par. 37—21(c)) provides as follows:

"(c) Where 2 or more applicants propose to conduct horse race meetings within 35 miles of each other, as certified by the Board under section 19(a)(1) if this Act, on conflicting dates, the Board may determine and grant the number of racing days to be allotted to the several applicants. In the granting of organization licenses and in allocating dates for horse race meetings which will, in its judgment, be conducive to the best interests of the public and the sport of horse racing, the Board shall give consideration to an agreement among organizations, as provided in subsection (b) of Section 21 of this Act, and also shall give due consideration to:

(1) the character, reputation, experience and financial integrity of the applicants and or any other or separate person that either:

(i) controls, directly or indirectly, such applicant, or,

(ii) is controlled, directly or indirectly, by such applicant or by a person which controls, directly or indirectly, such applicant;

(2) their facilities and accommodations for the conduct of horse race meetings;

(3) the location of the tracks of the applicants in relation to the principal centers of population of the State;

(4) the highest prospective total revenue to be derived by the State from the conduct of such meets;

(5) the good faith affirmative action plan of each applicant to recruit, train, and upgrade minorities in all classifications within the association."

■ We hold the court's ruling erroneous for two reasons. First, when the legislature amended section 21(c) to reduce the distance be-

tween tracks from 45 miles to 35 miles (Pub. Act 83—1448), the following statement was made by Senator Phillip Rock in support of the SB 1629, House Amendment 4:

> "What Balmoral is attempting to do and attempting to persuade the racing board that it would be in the best interest of racing to afford them the opportunity to race thoroughbreds at night out at Balmoral at the same time, or perhaps overlap at the same time, that standardbreds are racing at Sportsman's Park, and that's what the conflict is." Senate Transcripts, June 28, 1984, at 193.

Shortly thereafter, in the course of continued debate on the amendment, Senator Rock stated:

> "I really believe, given the fact that Balmoral Race Track and all the parimutual [*sic*] employees and all the concessionaires and their employees \*\*\* I think they ought to have a chance. *Now we can't grant them that chance because we can't, under our law, dictate to the Illinois Racing Board the award of dates or times or any of that stuff, that's up to them.* All we are \*\*\* we are doing is affording the racing board that opportunity. *If they don't want to do it, they don't have to do it, but we are not prohibiting it by law and I think that's a fair chance \*\*\*.*" (Emphasis added.) Senate Transcripts, June 28, 1984, at 202-03.

From this debate, it is clear that the General Assembly did not intend to *require* the Board to award competing dates if requested by an applicant located more than 35 miles from another track. Balmoral's situation was before the legislature at that time, and the trial court's construction is plainly at variance with the legislative intent.

The plain language of the statute, taken as a whole, obviates the court's construction, as well. Section 19(a) of the Horse Racing Act states explicitly that no organization license may be granted to conduct a horse race meeting to any person at a track within 35 miles of any other track licensed to hold a race meeting on the same date during the same hours. The first sentence of section 21(c) merely adds discretion to the Board to allocate dates among the applicants when two or more apply for conflicting dates within 35 miles.

We agree with the Board that the second sentence of 21(c) applies to all applications for dates because it refers to section 21(b). Overall, the Board is to use its judgment to allocate dates which will be conducive to the best interests of the public and the sport of horse racing, and the factors enumerated in the second sentence of section 21(c) are broadly drawn guidelines for the Board to use in exercising its discre-

tion. The trial court erred in ruling that the Board could only consider those factors when it had competing applications for tracks within 35 miles of one another.

We have carefully reviewed the record which was before the Board. Evidence concerning each of these factors was plainly before the Board. Even without express findings as to each point, we conclude that the Board must be presumed to have considered each and every factor listed in section 21(c). Briefly summarized, those factors and evidence are as follows:

(1) The character, reputation, experience and financial integrity of the applicants—Each application for a license contained extensive information about the financial situation, political activity, criminal and civil litigation history, property ownership, and employment of each applicant and those persons who either controlled the applicant or were controlled by the applicant.

(2) Facilities and accommodations—Each applicant had to describe its facilities in detail, and the Board order included a number of commitments and requirements for improvements.

(3) Location—The application required information concerning the population centers from which each track attracted customers, and the Board order took into account the location of the respective tracks.

(4) Highest State revenue—The Board order recited figures from previous years and from the financial statements of the applicants which provided the basis for its determination that State revenue could best be maximized by giving Arlington Park market exclusivity; also, the Board had statistical studies comparing revenues of various racing programs.

(5) Affirmative action plan—Each applicant provided details of an affirmative action plan and these were acknowledged in the Board order.

Thus, it is apparent that the Board applied the tests required under section 21(c) to the evidence before it in reaching its conclusion that Balmoral should be limited to harness racing in order to avoid direct competition with Arlington Park or other Cook County thoroughbred meets.

Balmoral insists that the same factors as are present in 21(c) are also included in sections 12.1 and 19(a) of the Illinois Horse Racing Act. Section 12.1 sets out the requirements for affirmative action plans in much more detail than does section 21(c)(5).

Section 19(a) lists certain restrictions on issuance of licenses, including that a license may not be issued to a track within 35 miles of

another track licensed to hold a meet on the same date; to any person in default to the State; to anyone who has been convicted of violating any Federal or State laws where the penalty is imprisonment or who has engaged in any illegal business or who does not have a reputation as an honest, law-abiding citizen; or to anyone who does not own or have a lease for a finished race track. These restrictions do not, in fact, duplicate the requirements of section 21(c), and Balmoral's argument cannot prevail.

■■ ■ Finally, we are mindful that the interpretation given a statute by the agency charged with its administration and enforcement, though not binding, is generally accorded deference by the courts. (*City of Burbank v. Illinois State Labor Relations Board* (1989), 128 Ill. 2d 335, 538 N.E.2d 1146.) Therefore, we hold that section 21(c) sets forth factors to be considered by the Board in the exercise of its discretion and that the Board acted within its authority in applying the factors of section 21(c) to Balmoral's application for thoroughbred dates.

■■ Next, we are asked to decide whether the trial court erred in ruling that the decision of the Board in denying thoroughbred dates to Balmoral was against the manifest weight of the evidence. The appropriate standard of review was summarized in *Coleman v. Illinois Racing Board* (1988), 124 Ill. 2d 218, 221:

"It is well settled that findings of fact by an administrative agency are considered to be *prima facie* true and correct. [Citations.] Courts will not interfere with the discretionary authority of administrative bodies unless the administrative decision is contrary to the manifest weight of the evidence [citation]."

The standard for determining whether an agency judgment was contrary to the manifest weight of the evidence was well stated in *Evert v. Board of Trustees of Fire Fighters' Pension Fund* (1989), 180 Ill. App. 3d 656, 660, 536 N.E.2d 143, 146, as follows:

"To make such a finding, a court must conclude that all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous and the opposite conclusion is clearly evident. [Citation.] It is not sufficient that there are mere conflicts in the testimony or that an opposite conclusion might be reasonable; since the weight of the evidence and the credibility of the witnesses are within the province of the agency, *there need be only some competent evidence in the record to support its findings.* [Citation.]" (Emphasis added.)

The record in this cause contains an extensive amount of financial data pertaining to the State revenue realized from horse racing over the last five years. The Illinois Racing Board analyzed that data and concluded that State revenue would be increased by eliminating thoroughbred competition between the Balmoral track and the Cook County tracks while awarding a full year of harness racing dates to Balmoral. The analysis of State revenue from each track for the years 1989 and 1990 supports the conclusion of the Board that competition resulted in decreased State revenue at Arlington Park and Hawthorne while the revenue from Balmoral's thoroughbred racing was not significantly greater than from harness racing.

The trial court conducted its own analysis of the data in the record and reached a different conclusion. In its order, the trial court stated that "the best interest of the public in maximizing State Revenue is adversely affected by increased numbers of offtrack betting facilities and has no relationship as to whether thoroughbred horseracing programs are run concurrently or not." In doing so, the court exceeded its authority by reweighing the evidence and substituting its judgment for that of the Racing Board. Furthermore, the court apparently overlooked the fact that a decrease in the tax rate was responsible for the decline in revenue which accompanied the establishment of offtrack betting facilities as indicated by the fact that the total handle increased at the same time tax revenue decreased.

In a related ruling, the trial court held that the Board's finding that the supply of thoroughbred horses is inadequate to provide full fields for concurrent racing at Balmoral and at Cook County tracks was contrary to the manifest weight of the evidence. The Board considered that short fields at the tracks which ran meets in opposition to dates at Balmoral caused a decline in attendance and handle at those meets and that short fields were attributed to the limited supply of thoroughbred horses and the increasing number of thoroughbred race meetings in the Middle West. Again, the trial court apparently examined the evidence in the record and reached its own conclusion that the number of horses entered in racing events was dependent upon factors other than competition from concurrent racing meets.

As to this issue, too, the trial court substituted its judgment for that of the Racing Board and, after reweighing the evidence, reached a different result. This is not the function of the court on administrative review, where the findings and conclusions of the administrative agency on questions of fact must be held to be *prima facie* true and correct. Ill. Rev. Stat. 1989, ch. 110, par. 3—110.

Given the evidence in the record, we must hold that the findings and conclusions of the Illinois Racing Board were supported by sufficient credible evidence to be sustained. The ruling of the trial court to the contrary is reversed.

■ Balmoral has argued that the Racing Board improperly ignored the track's long history of thoroughbred racing and the expenditure of money to refurbish Balmoral Park and to enhance thoroughbred facilities. However, under Illinois law no track has a vested right to a racing meet license. Each license is issued for one calendar year only and does not entitled the holder to special preference in future years except where an agreement for a longer program has been approved by the Board pursuant to section 21(b).

The trial court also ruled that the procedural requirements of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1989, ch. 127, par. 1001 *et seq.*) was applicable to the 1991 dates hearing of the Illinois Racing Board and that the Board failed to comply with the rules governing contested cases.

Section 2 of that Act states, in part:

"(a) This Act applies to every agency as defined herein. *** However if an agency has existing procedures on July 1, 1977 specifically for contested cases or licensing those existing provisions control." Ill. Rev. Stat. 1989, ch. 127, par. 1002.

■ Included in the record on appeal is the affidavit of Racing Board member Cecil J. Troy wherein he asserted that the Board has had procedures in place for conducting racing dates hearings since 1976 and that those procedures have not changed in any material respect. He further stated that the Board has always conducted its dates hearings as if the Administrative Procedure Act did not apply and has restricted the right of applicants to ask questions or to cross-examine competing applicants. None of the facts sworn to by Troy are disputed. We hold that the Board proceedings come within the exception to the Act.

Considering the nature of the racing dates hearing, the quantity of information provided by the application process, and the interrelatedness of the issues to be considered by the Board in making timely allocation of dates between the various applicants, it is apparent that, as a practical matter, it would be impossible to conduct a manageable hearing following statutory administrative procedures. Accordingly, we hold that the Illinois Administrative Procedure Act does not apply to hearings for the allotment of racing dates.

■ During the pendency of this appeal, Balmoral filed a motion to dismiss that part of the appeal which related to the trial court's re-

mand of this cause to the Board with directions to award thoroughbred racing dates to Balmoral. The rationale of the motion was that the remand portion of the order was not final and appealable. We took that motion with the case and now conclude that the issue raised is moot since we are reversing the entire order of the trial court. Therefore, the motion to dismiss is denied.

Similarly, the appeal of Hawthorne Race Course relates solely to the remand portion of the trial court's order. Since we are reversing that order, we need not consider the issues raised in the briefs filed by Hawthorne. Another issue raised by the Racing Board was whether Balmoral's acceptance of the harness racing dates amounted to a waiver of any objections to the Board's order. That issue also need not be considered in view of our reversal of the trial court.

For the reasons stated, we reverse the order of the circuit court of Will County and reinstate the order of the Illinois Racing Board.

Reversed.

McCUSKEY and GORMAN, JJ., concur.