THE VILLAGE OF ELK GROVE VILLAGE, Appellant, v. THE ILLINOIS
STATE LABOR RELATIONS BOARD *et al.*, Appellees.

Second District   No. 2—92—0855

Opinion filed May 3, 1993.

Robert C. Long, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Anthony B. Byergo, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield, and Jacalyn Zimmerman, of Illinois State Labor Relations Board, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

Joel D'Alba and Anne Wells Clark, both of Asher, Gittler, Greenfield, Cohen & D'Alba, Ltd., of Chicago, for respondent Elk Grove Village Fire Fighters Association.

Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for *amicus curiae.*

JUSTICE BOWMAN delivered the opinion of the court:

The Village of Elk Grove Village (Village) seeks administrative review of an order of the Illinois State Labor Relations Board (Board). The order certified the Elk Grove Village Fire Fighters Association, Local No. 3398 (Union), as the exclusive representative of a bargaining unit for purposes of collective bargaining. The bargaining unit consists of all full-time sworn lieutenants, lieutenants/paramedics, fire fighters, fire fighters/paramedics, and probationary fire fighters of the Village fire department. The Village asserts that the Board erred in including the lieutenants in the bargaining unit since

the position of lieutenant is supervisory and, as such, is excluded by the Act. We affirm the order of the Board.

This action began when the Union filed a representation and certification petition with the Board, seeking to represent a bargaining unit of fire department employees, including fire fighters and lieutenants. At a hearing on the petition, the following facts were revealed. The Elk Grove Village fire department (Department) has a paramilitary structure. It is headed by a chief who holds ultimate responsibility for the activities of the Department. The chief is assisted by a deputy chief and two administrative captains, a civilian fire inspector, and a civilian training coordinator. All of these personnel work from 9 a.m. to 5 p.m., Monday through Friday, and neither regularly respond to fire calls nor direct the daily activities of the fire station personnel. The remaining sworn personnel consist of 3 captains, 18 lieutenants, and 69 fire fighters.

The fire stations are staffed by three shifts, each shift consisting of 1 captain, 6 lieutenants, and 23 fire fighters. Each shift works 24 consecutive hours and then is off for 48 consecutive hours. The captain serves as shift commander and holds overall responsibility for the shift and the activities of the four fire stations. Shift commanders are not directly involved in the daily, routine activities of the remaining shift personnel. In the captain's absence, a lieutenant will serve as acting shift commander.

Below the captain, the shift personnel are assigned to one of five companies based in the four fire stations in the Village. A company is a group of workers assigned to a specific apparatus which has a distinct role in the fire service. All of the lieutenants, on their respective shifts, serve in the role of company officer and are in charge of and generally held accountable for the actions and conduct of the fire fighters in their company. Occasionally, a lieutenant who is also a paramedic will be assigned to an ambulance. In this event, the lieutenant is not the company officer, but acts under the command of the assigned company officer.

In order to achieve its general functional goals, the Department maintains an organizational structure based on committee assignments. Most of the sworn personnel serve on either a main committee or a subcommittee designed to facilitate a specific goal. Basically, the committees develop programs, have responsibility for preparing budget packages for their areas of expertise, and act to improve the Department's efficiency. The lieutenants, who serve as officers in charge, guide and direct the work of the committees and see to it that the committee objectives are carried out.

One of the major functions of the committees is to have input into the budgeting process. The committee members suggest ideas to the officer in charge who, in turn, prioritizes the ideas, completes the necessary forms supplied by the Village, and submits the resulting "decision package" to the officers in charge of the major committees. All decision packages are then submitted to the chief or deputy chief for review and further prioritization as part of the development of a proposed budget for the entire Department. The final approval of a proposed budget must come from the Village's board of trustees.

With regard to their day-to-day duties, the lieutenants prepare the work schedules, adhering to minimum manning requirements issued by the chief. The manning requirements must be met even when an unscheduled absence occurs. In this event, the lieutenants decide whether a fire fighter can be transferred from another station or whether it is necessary to hold over or hire back the needed personnel. In making these decisions, the lieutenants utilize lists which show employee qualifications or specialties in order to make proper assignments to specific apparatus. They then make a recommendation to the shift captain as to who should fill in the vacant position.

During a typical morning at the stations, the fire fighters will conduct an apparatus check and do the daily maintenance of the station while the lieutenants tend to mail and paperwork and perform general administrative tasks. The lieutenants review the fire fighters' work and make sure any problems are corrected. This review takes about 20 minutes. Each day, two to three of the afternoon hours are devoted to either training or another specific activity. While the lieutenants keep the company attendance and certification records for emergency medical service (EMS) training, they themselves also attend the sessions for training. The content of the training exercises is determined by the training coordinator, although the lieutenants and fire fighters with specialties develop the actual training drills. The lieutenants select and usually lead the drill to be completed on a given day.

Each month the companies are expected to participate in public education activities and perform inspections of emergency key boxes at businesses in the Village. The lieutenants schedule and oversee these tasks. In addition, the companies conduct a number of different kinds of fire preparedness inspections each month. While the list of sites to be inspected is prepared by a captain, the lieutenants are in charge of the inspections themselves. Either the

lieutenant or a fire fighter completes a checklist or other form relative to each inspection. The lieutenant then sends the form to the captain. Also on a recurring basis, the fire fighters perform needed in-depth maintenance of tools and apparatus. The lieutenants assign and review this work.

In the event of an emergency response, the company officers ride on the engine with the fire fighters but stay in communication by radio with the dispatchers and the shift commander. The first company officer to arrive at the scene is designated an "incident commander" and is in charge of all the fire fighters who respond to the emergency. The incident commander decides the actions to be taken, directs the fire fighters, and determines whether to call for backup or to reduce the response. The shift commander, who automatically responds to all structural fire scenes, can choose whether to assume command. The company officers guide their companies in accord with the direction of the incident commander. When the emergency involves a medical service, the company officer is responsible for the overall company response to the incident, both fire engine and ambulance. However, the most senior paramedic is specifically responsible for patient care.

Lieutenant Goss is EMS coordinator for the Department and Lieutenant Goostree is public education officer. In their respective capacities, these lieutenants are in charge of the primary functional activities of the Department, and they report directly to the chief. They are responsible for making recommendations relative to policy and procedure and for the preparation of budget proposals for their special activities. In preparing the budgets, Lieutenants Goss and Goostree receive input from the pertinent subcommittees or directly from fire fighters. Goss must include this input in his budget package. Much of Goostree's budget is devoted to maintaining or modifying existing programs, although he also implements new programs. The proposed budgets are then forwarded to the deputy chief for consideration in formulating the overall Department budget. Goss and Goostree are also responsible for the proper administration of their respective budget allocations.

Lieutenant Goss has the additional task of maintaining proper stock supplies for the EMS function, which accounts for the second largest portion of the Department's total budget. Goss is also the Department's liaison to the Northwest Hospital EMS system. Along with his peers from other villages, Goss has input to the hospital's policies and procedures for fire department EMS systems.

The fire fighters, including probationary personnel, are evaluated by the lieutenants every six months. The evaluation consists of completing a one-page form by writing comments concerning the particular fire fighter in nine different categories of employee characteristics. The evaluations of probationary fire fighters are sent to the Village's board of police and fire commissioners (Commission) to aid in the determination of whether to retain such personnel permanently. Also, the shift captain often seeks the views of the lieutenant before recommending for or against the retention of a particular fire fighter. As for promotion of fire fighters to the position of lieutenant, the chief gives a merit and efficiency rating for each applicant. In the process of developing that rating the chief reviews and takes into account the evaluations done by the lieutenants.

With regard to discipline, certain actions are within the discretion of the lieutenants. They can issue oral reprimands and recommend further discipline such as a written reprimand and are authorized to issue emergency suspensions. No lieutenant, however, has ever given an oral reprimand or instituted an emergency suspension. A lieutenant would impose a suspension only if no superior officer was available. In other matters, lieutenants adjust informal grievances and resolve minor disputes among the fire fighters, such as personality conflicts and complaints regarding work assignments. Lieutenants also serve as the first step in the formal grievance process.

Following the hearing, the hearing officer issued a recommended decision and direction of election. The hearing officer concluded that the fire lieutenants were not supervisory employees and the EMS coordinator and the public education officer were not managerial employees under the Illinois Public Labor Relations Act. The hearing officer also found that the fire fighters and lieutenants constituted an appropriate unit. The Board adopted the hearing officer's recommended decision and issued an order directing an election for representation. After the election the Village filed an objection, alleging that the presence of the fire lieutenants in the bargaining unit tainted the election process due to the lieutenants' supervisory authority over subordinate bargaining unit members. The executive director of the Board, however, reported that he found no reasonable cause to believe that the result of the election was not fairly and freely chosen by a majority of the employees. The Board ultimately affirmed the executive director's report, and the Village timely filed its petition for administrative review.

The Village appeals directly to this court pursuant to section 9(i) of the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1609(i)). Section 9(i) provides that judicial review of Board action is to be governed by the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—110). According to that law, the findings and conclusions of the Board on questions of fact are considered *prima facie* true and correct. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110.) However, the reviewing court may reverse the agency's findings of fact when they are against the manifest weight of the evidence and it is clearly evident the agency should have reached an opposite conclusion. (*City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 507; *Balmoral Racing Club, Inc. v. Illinois Racing Board* (1991), 214 Ill. App. 3d 112, 119, *rev'd on other grounds* (1992), 151 Ill. 2d 367.) Although a reviewing court is not bound by administrative decisions interpreting the legal effect of statutory language, the court will give the agency's conclusions great weight in arriving at its own statutory construction. (*Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board* (1987), 154 Ill. App. 3d 1045, 1057.) The expertise and experience of an administrative agency enable it to make informed judgments on the issues and render the agency's interpretation of its enabling legislation worthy of great weight and deference. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152-53; *Village of Oak Park v. Illinois State Labor Relations Board* (1988), 168 Ill. App. 3d 7, 19.) These principles guide our examination of the issues before us.

■ The Village contends that the lieutenants are supervisors or managers and that, pursuant to statute, they should have been excluded from the bargaining unit. Section 2 of the Act sets forth the policy that public employees may join unions and be represented by a union for purposes of collective bargaining. (Ill. Rev. Stat. 1989, ch. 48, par. 1602.) In pertinent part the Act defines a "public employee" as follows:

" 'Public employee' or 'employee' *** means any individual employed by a public employer, *** excluding all of the following: *** managerial employees; *** and supervisors ***." (Ill. Rev. Stat. 1989, ch. 48, par. 1603(n).)

With respect to fire fighters the statute adds:

"[I]n new fire fighter units, employees shall consist of fire fighters of the rank of company officer and below; provided, if a company officer otherwise qualifies as a supervisor pursu-

ant to [this statute], he or she shall not be included in the fire fighter unit ***." (Ill. Rev. Stat. 1989, ch. 48, par. 1603(r).)

Thus, the lieutenants here, who serve as company officers, must be considered employees with the right to be included in an employee bargaining unit, unless they fall within the statutory definition of a supervisor. It is plainly evident that a "supervisor" is not to be included in a bargaining unit made up of "employees." The Village urges that the lieutenants fit within the "supervisor" exclusion.

■ Section 3(r) of the Act defines a supervisor as:

"[A]n employee whose principal work is substantially different from that of his subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, or to adjust their grievances, or to effectively recommend such action, if the exercise of such authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. *** [T]he term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising such authority ***." (Ill. Rev. Stat. 1989, ch. 48, par. 1603(r).)

The definition of a "supervisor," as it appears in the Act, was construed by our supreme court in *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499. *Freeport* resolved two consolidated appeals, one of which involved police personnel in the City of Freeport. The other appeal was brought by the Village of Wheeling to determine whether the lieutenants in its fire department were supervisors within the Act. The court found that an employee of the fire department must meet four distinct statutory requirements in order to be a supervisor. The employee must (1) perform principal work which is substantially different from that of his subordinates; (2) have the authority to take one or more of the supervisory actions named in the statute, or to effectively recommend such action, in the interest of the employer; (3) consistently use independent judgment in exercising that authority; and (4) devote a preponderance of employment time to exercising his authority. (*Freeport*, 135 Ill. 2d at 526-33.) Furthermore, an employee will be considered a supervisor, and thereby be excluded from an employee bargaining unit, only if he meets all applicable parts of the test. *Freeport*, 135 Ill. 2d at 526-33.

The Board in this case found that the lieutenants met the first requirement in that their work was substantially different from that

of the fire fighters. With regard to the second requirement, the Board found that the lieutenants have the authority to effectively recommend the transfer of fire fighters between stations, to adjust grievances, to discipline and suspend, and to direct the fire fighters. Accordingly, the Board determined that the lieutenants also fulfilled the second part of the *Freeport* test. As for the third requirement, the Board found that the only areas of supervisory authority requiring the lieutenants consistently to use independent judgment was the authority to discipline and the authority to suspend. After further finding that the authority had never been exercised, the Board concluded that the lieutenants did not spend a preponderance of their employment time exercising their authority. Since the lieutenants could not meet all four parts of the requisite test, the Board concluded they were not supervisors and could properly be included in a bargaining unit with the fire fighters.

The Village claims the Board erred when it found that the lieutenants do not have authority to effectively recommend the hiring or promotion of fire fighters and do not use independent judgment in directing the fire fighters in either day-to-day activities or emergency responses, in transferring fire fighters between stations, or in adjusting the fire fighters' grievances. The Village then asserts that these erroneous findings led to the mistaken conclusion that the lieutenants do not meet the preponderance prong of the *Freeport* test. The record does not support the Village's argument. We note at the outset that our disposition of the issues in this case is informed in large part by *Freeport*. The facts in *Freeport* were remarkably similar to the facts of this case, and many of the same issues were raised.

The lieutenants themselves do not actually hire the fire fighters. The authority to hire, promote, discharge and reward fire fighters is vested by statute in the board of fire and police commissioners. (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—1 *et seq.*) The Village does not dispute this proposition. Rather, it insists that the lieutenants effectively recommend which probationary fire fighters should be given permanent status. However, the record reflects that the lieutenants' formal input to the hiring process is limited to the evaluation forms they complete on each probationary employee during the 12-month probationary period. The fire and police commission reviews these forms and assesses the information provided by the lieutenants before it decides to hire a probationary fire fighter. Less formal input is garnered verbally from the lieutenants by the chief and captains in addition to what goes into the formal evaluations.

The Commission, however, communicates directly with the captains and the chief, not the lieutenants. It is also noteworthy that an evaluation prepared by a lieutenant is subject to review and approval by both the pertinent shift captain and the chief before it is discussed with the fire fighter himself. Too, the higher officers, as well as the Commission, can either accept or reject a lieutenant's recommendations. All in all, the input the lieutenants have is not persuasive that they have the authority to *effectively* recommend the hiring of probationary personnel. Thus, we cannot say the Board's finding on this issue was contrary to the manifest weight of the evidence.

The Village also challenges the Board's determination that the lieutenants do not have the authority to effectively recommend promotions of subordinate fire fighters. In support, the Village states in its brief that the rules and regulations of the Commission "expressly state that five points [out of 100] toward promotion are based solely on the evaluations conducted by the lieutenants." Our examination of the record, however, reveals no such statement.

The Board rules state that promotion "shall be on the basis of ascertained merit, seniority of service and examination." An applicant receives a numerical rating for each factor, and the applicants with the highest overall ratings receive promotions. With particular reference to the merit factor, the rules provide that, for each candidate who has successfully completed the required examinations, the fire chief is to prepare a merit and efficiency rating for the Commission. This rating has a value of 10 points and consists of two parts, each part worth five points.

The first part of the merit and efficiency rating is described as follows:

"Evaluation ratings determined by adding the scores of the last years [*sic*] regular evaluations ratings conducted by the respective department and dividing by the number of evaluations conducted during said one year period."

The score derived from this calculation is then to be automatically applied by the Commission's secretary. The second part of the rating is an evaluation determined by the chief. It is the first part of the test which the Village claims is based solely on the lieutenants' evaluations. However, as can be seen, the rule does not so state. Moreover, testimony at the hearing indicated that the lieutenants do not give any kind of numerical rating when they evaluate the fire fighters. At best, we find the language the Village relies on to

be ambiguous as to the role of the lieutenants in the promotion process.

Too, even if they are worth a maximum of five points, the evaluations done by the lieutenants are not the most significant factor in promotion decisions. According to the Commission rules, the various factors which make up an applicant's score are weighted as follows: written examination—40%, oral examination—40%, merit and efficiency rating—10%, and seniority credit—10%. Hence, even assuming the evaluations have numerical value, they pale in importance compared to the weight given to the examinations.

What the lieutenants provide is input regarding a fire fighter's job performance. This input is one part of a much broader process in which information from a variety of sources is channeled to the Commission, which then sorts through and weighs that information and makes the final decisions. We do not believe a lieutenant's input to the Commission can be equated with an effective recommendation regarding a fire fighter's employment status, and the Board's conclusion in this regard, therefore, is not against the manifest weight of the evidence.

We turn now to the Village's contention that the Board erred in its findings regarding the third prong of the *Freeport* test. As noted, the Board found that only the lieutenants' authority to discipline and suspend required the consistent use of independent judgment. The Village maintains that independent judgment is also exercised in the day-to-day direction of the fire fighters' nonemergency activities. In *Freeport* the exercise of authority to discipline and suspend required the consistent use of independent judgment only because the lieutenants had to "choose between two or more significant courses of action without broad review or approval by the chief." (*Freeport*, 135 Ill. 2d at 532.) The lieutenants' general direction of the fire fighters in this case does not involve the kinds of choices delineated in *Freeport*.

We note first of all that, while a lieutenant is generally a company officer, he is not the senior officer when he is on duty. On each shift, a captain has the overall responsibility for the fire stations, and the lieutenants look to him for guidance when necessary. Moreover, the lieutenants' day-to-day direction of the fire fighters is highly routine. The schedules are well established and need only be followed. The same morning tasks, performed according to set standards, are essentially repeated week after week. Afternoon training activities are also scheduled and planned for the lieutenants. While they sometimes lead training exercises, the lieutenants

do not control what the training will be. That is up to the training coordinator and the hospital. While it is true the lieutenants are in charge of fire inspections, the inspections themselves are basically repetitive, following a checklist of items to be completed, and do not call for choices between multiple courses of action.

The words used by the *Freeport* court to characterize certain functions of police officers in that case are also apt here:

"Certain supervisory functions are routine or ministerial in nature and do not generally require the use of independent judgment. The fact that performance of such functions may occasionally require the ranking officer to use discretion or independent judgment is not sufficient to satisfy the third prong of the supervisory definition." (*Freeport*, 135 Ill. 2d at 521.)

The discretion and independent judgment which the Village ascribes to the lieutenants' nonemergency direction of the fire fighters is not of sufficient magnitude to meet the third requirement of the statute, and the Board did not err in so finding.

As for the authority to transfer between stations, hold over, or hire back fire fighters, the lieutenants need exercise very little discretion. These activities are dictated by manning and special skills requirements and are carried out pursuant to standard operating procedures. Similarly, the authority to adjust grievances informally extends to only the most minor and routine matters and does not trigger significant independent judgment. As to formal grievances, the lieutenants serve merely as the first step. Once again, the Board was correct in determining the lieutenants' authority does not measure up to the requirements of the statute.

In contrast to the structured and routine supervision administered at the fire station, lieutenants must exercise broad discretion and make quick decisions in directing their companies during emergency responses. However, the direction the lieutenants give to fire fighters at a fire scene "is derived from their superior skill, experience and technical expertise and therefore does not require the use of independent judgment 'in the interest of the employer' as required by the statute." (*Freeport*, 135 Ill. 2d at 532; *Village of Downers Grove v. Illinois State Labor Relations Board* (1991), 221 Ill. App. 3d 47, 55.) We take this language to mean that, when it comes to fighting a fire, a lieutenant brings to bear all of the experience, all of the specialized training, all of the skills he has acquired, *as a fire fighter*, rather than as a member of the employer's management team. His decisions are driven, not by his concern for

his employer, but by the nature of the fire itself. Although the Village characterizes it as a perversion of legal authority, we think it accurate to say that a lieutenant's decisions at a fire scene are tactical, rather than managerial, in nature. As we read *Freeport*, it is in this sense that, although fire lieutenants certainly exercise discretion and judgment at a fire scene, they do not do so *in the interest of the employer* as required by the statute. Despite the Village's attempts to persuade us to the contrary, we find *Freeport* controlling on this issue.

■ To summarize, the Board did not err in determining that the exercise of authority by the lieutenants, other than the authority to discipline and suspend, does not require the consistent use of independent judgment. However, the authority to suspend or to issue an oral reprimand has never been exercised by the lieutenants. Accordingly, the Board's conclusion that the lieutenants do not spend a preponderance of their time exercising supervisory authority is not against the manifest weight of the evidence. The lieutenants do not meet all four parts of the *Freeport* test for determining supervisory status. Consequently, the Board properly included them in the employee bargaining unit. In light of *Freeport*, where the court reached the same conclusion on essentially the same facts, we are convinced that our conclusion is correct.

■ In an argument similar to those just discussed, the Village maintains that the role of the lieutenants on the functional committees and subcommittees renders them managers or combined managers/supervisors. The Village focuses particularly on Lieutenant Goss, the EMS coordinator, and Lieutenant Goostree, the public education officer.

A "[m]anagerial employee" is defined in the statute as "an individual who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of such management policies and practices." (Ill. Rev. Stat. 1989, ch. 48, par. 1603(j).) In *City of Evanston v. Illinois State Labor Relations Board* (1992), 227 Ill. App. 3d 955, the court applied a two-part test, originally developed by the Board (see *State of Illinois (Departments of Central Management Services & Public Aid)*, 2 Pub. Employee Rep. (Ill.) par. 2019, No. S—UC—46 (ISLRB April 2, 1986); *State of Illinois (Department of Central Management Services)*, 1 Pub. Employee Rep. (Ill.) par. 2014, Nos. S—UC—6, S—UC—8 (ISLRB July 17, 1985)), for determining managerial status. First, the employee must be engaged predominantly in executive and management functions which specifically relate to running a de-

partment and include such activities as formulating department policy, preparing the budget, and assuring efficient and effective operations of the department. Second, the employee must direct the effectuation of management policies and procedures.

The *Evanston* court applied the test to the division chief of emergency medical services and the assistant fire chiefs, who were the shift commanders. The duties of the shift commanders in *Evanston* were very similar to those of the lieutenants in this case. Stating that executive functions require more than the exercise of professional discretion and technical expertise, the court found that a managerial employee must possess and exercise sufficient authority and discretion to bring about a department's goals, or the means of achieving its goals, on a broad scale. Too, an employee is not a manager if his policymaking role is advisory and subordinate since "it is the final responsibility and independent authority to establish and effectuate policy that determines managerial status under the Act." (*Evanston*, 227 Ill. App. 3d at 975.) With regard to the second part of the test, the employee must have substantial discretion to determine how and to what extent policies will be implemented and have authority to oversee and direct that implementation. (*Freeport*, 227 Ill. App. 3d at 975.) The *Evanston* court held that the shift commanders were not managerial employees under the Act.

The record in this case reflects that, while Lieutenant Goss does prepare the EMS budget, much of that budget is devoted to stock items which must merely be reordered on a recurring basis. Other items are budgeted simply as they are needed. Thus, developing the budget itself is largely mechanical and responsive to the requirements of EMS. Also, like the committee budgets, the EMS budget is reviewed by the chief and subject to revision before being included in the overall Department budget. Thus, Lieutenant Goss' role in the budget process is essentially advisory. To the extent Goss oversees EMS he certainly has input into Department policies and procedures. However, to a great degree the structure and procedures of EMS are developed and promulgated by the hospital. Goss, who is the Department's liaison to the hospital, drafts operating directives for EMS, but even those are based significantly on the procedures established by the hospital.

Similarly, Lieutenant Goostree's role in the budget-making process is highly perfunctory and mainly advisory. Much of the public education budget is concerned with existing programs, and newly budgeted programs are subject to review and possible reprioritiza-

tion or rejection by superior officers. In addition, Goostree has a very limited role in the area of policy making. He has input to policy changes, but very little say in how policies will be carried out. He also develops new programs, an activity which helps to assure the effectiveness of the public education function. Nevertheless, even collectively, Goostree's activities cannot be said to impact significantly the formulation of overall Department policy. We conclude, as did the Board, that neither Goss' nor Goostree's functions suffice to fulfill either prong of the statutory test for a manager.

We likewise reject the Village's suggestion that if the committee activities of the other lieutenants, which the Village characterizes as managerial functions, were "tacked" to their supervisory activities, those officers would then meet the preponderance and/or predominance tests and would qualify as supervisors and/or managers. We have already found that Lieutenants Goss and Goostree do not rise to the level of managers even though they direct major functions of the Department. As far as we can tell from the record, none of the other committee assignments are as extensive or significant as those of Goss and Goostree. Hence, even if we were to find that "tacking" was proper, and we do not so find, it would be of no avail. If Goss' and Goostree's committee duties do not qualify as managerial, none of the duties of the other lieutenants qualify, either. Absent any "managerial" functions, there is nothing to "tack" to the lieutenants' limited "supervisory" functions, and the lieutenants still could meet neither of the relevant tests.

■ The final argument made by the Village is not persuasive. We are urged to reverse the Board's decision, even if we find the lieutenants are not supervisors or managers, on the ground that the lieutenants cannot be placed in the same bargaining unit as the fire fighters because of the authority the lieutenants exercise over the fire fighters. Calling the lieutenants' authority "extensive," the Village invokes the principle, articulated in *Freeport*, that supervisors should be excluded from a bargaining unit of their subordinates in order to avoid a conflict of interest between the employer and the Union. *Freeport*, 135 Ill. 2d at 507.

The Village's citation of cases decided under the Federal Labor Relations Act is not helpful since several recent Illinois cases have determined that units made up of employees such as the fire fighters and the lieutenants in this case are proper, despite the authority exercised by one group over the other. (See *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499; *City of Evanston v. Illinois State Labor Relations Board* (1992), 227 Ill.

App. 3d 955; *Village of Downers Grove v. Illinois State Labor Relations Board* (1991), 221 Ill. App. 3d 47.) These decisions are in accord with our present statutory scheme. As we have discussed, by its express terms the Act excludes supervisors and managerial personnel from its coverage. If a public employee is not a supervisor or manager, he or she may be included in a collective bargaining unit made up of other public employees. We have determined that the lieutenants are neither supervisors nor managers. Therefore, as public employees, they may be included in the bargaining unit involved here. The Village presents us with no compelling reason to deviate from the statutory provisions and prior authority.

For all of the reasons set forth above, the order of the Board, certifying the Union as the representative of a bargaining unit which includes the lieutenants, is affirmed.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.