CHIEF JUDGE OF THE EIGHTEENTH JUDICIAL CIRCUIT, Petitioner-Appellant, v. ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

Second District    No. 2—98—1182

Opinion filed March 1, 2000.

R. Theodore Clark, Jr., Jill D. Leka, and Michael R. Gotzler, all of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for petitioner.

Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for respondent American Federation of State, County & Municipal Employees.

James E. Ryan, Attorney General (Jerald S. Post, Assistant Attorney General, of counsel), and Jacalyn J. Zimmerman, both of Chicago, for respondent Illinois State Labor Relations Board.

JUSTICE BRESLIN delivered the opinion of the court:

Petitioner Chief Judge of the Eighteenth Judicial Circuit (Chief Judge) appeals from a decision of the Illinois State Labor Relations Board (Labor Relations Board or Board) which found that the probation officers of the Chief Judge's circuit are covered by the Illinois

Public Labor Relations Act (Labor Relations Act or Act) (5 ILCS 315/1 *et seq.* (West 1998)). Subsequently, the Board directed the election of a bargaining unit composed of the probation officers. On appeal, the Chief Judge argues that the Board violated the separation of powers doctrine by exercising jurisdiction over him and the probation officers or, alternatively, that the probation officers are excluded from the Act because they are managerial employees. We disagree and affirm. In so doing, we hold that the supreme court cannot be construed as a joint employer of the probation officers of the Chief Judge's circuit and that the probation officers do not meet the Act's definition of managerial employees.

## FACTS

The American Federation of State, County and Municipal Employees, Council 31 (AFSCME), filed a representation/certification petition with the Labor Relations Board seeking to represent a unit consisting of approximately 130 probation officers employed by the Department of Probation and Court Services in the Eighteenth Judicial Circuit (Probation Department). Subsequently, an eight-day hearing was held before the Board's administrative law judge (ALJ). The ALJ made extensive factual findings, the vast majority of which are not in dispute. A brief summary of the relevant evidence presented at the hearing is as follows.

The Illinois Supreme Court's Division of Probation Services (Probation Services) is statutorily charged with the development and enforcement of uniform probation services throughout the state. See 730 ILCS 110/15 (West 1998). Probation Services is part of the Administrative Office of the Illinois Courts (AOIC), the administrative body of the supreme court.

The probation officers' terms and conditions of employment are established by the Chief Judge, by Du Page County and by Probation Services. The decision to appoint and remove probation officers is completely within the discretion of the Chief Judge. See 730 ILCS 110/ 13, 15 (West 1998). The Chief Judge, however, can hire only applicants who have satisfied job requirements established by the AOIC. See 730 ILCS 110/15(2)(b) (West 1998). Further, the AOIC requires that the probation officers be covered by a pay plan which is implemented on the circuit level by the Probation Department. The Probation Department in this case is organized into five divisions: adult, adults special services, juvenile, juvenile detention and administrative support. A probation officer's duties vary with respect to which division he or she is assigned. The general duties of probation officer are detailed in the Probation and Probation Officers Act (Probation Act) (730 ILCS 110/ 0.01 *et seq.* (West 1998)).

Under the Probation Act, Illinois probation officers have the following responsibilities: (1) to investigate the case of any person placed on probation; (2) to notify the court in writing of any previous convictions; (3) to make written reports and notifications; (4) to make and keep records concerning probationers; (5) to develop and operate programs of reasonable community service for persons ordered by the court to perform community service; (6) to report to probation officers in other counties with respect to probationers who remove from one county to another; (7) to authorize travel permits to individuals under their supervision; and (8) to perform other duties as provided in the Probation Act or by rules of court. See 730 ILCS 110/12 (West 1998).

Following the hearing, the ALJ issued a recommended decision and order finding that, for the purposes of the Act, (1) the supreme court was not an employer of the probation officers; (2) the Chief Judge was the sole employer of the probation officers; (3) the Board had jurisdiction over the Chief Judge; and (4) the probation officers were not managerial employees as a matter either of law or fact. The Chief Judge filed exceptions to the ALJ's recommended order and concurrently filed a petition for a writ of prohibition and a motion to stay the proceedings before the Board with the supreme court. The supreme court denied these motions. Subsequently, the Board affirmed the decision of the ALJ and directed the secret ballot election of a unit representative. AFSCME won the election and the Chief Judge now appeals.

Additional facts relevant to this appeal will be introduced as they become necessary to our analysis.

## ANALYSIS

■ Separation of powers is implicit in the organizational structure of the state's government and the division of power among its three branches. *Administrative Office of the Illinois Courts v. State & Municipal Teamsters, Chauffeurs & Helpers Union, Local 726*, 167 Ill. 2d 180, 657 N.E.2d 972 (1995). The doctrine finds voice in article II of the Illinois Constitution, which states that the "legislative, executive and judicial branches are separate" and that no "branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Although the branches need not be kept so separate and distinct as to have no connection or dependence, the "whole power of two or more of these departments shall not be lodged in the same hands, whether of one or many." *Field v. People ex rel. McClernand*, 3 Ill. (2 Scam.) 79, 83-84 (1839).

The Chief Judge argues that application of the Illinois Public Labor Relations Act to the probation officers violates the doctrine of separation of powers. We cannot agree. We base our position mainly

upon the supreme court's decision in *County of Kane v. Carlson*, 116 Ill. 2d 186, 507 N.E.2d 482 (1987) (*Kane County*).

Similar to this case, in *Kane County* the supreme court was faced with the question of whether chief judges, as public employers of probation officers, could constitutionally be made subject to the Act. The court answered this question in the affirmative, relying in part upon the fact that final orders of the Labor Relations Board in cases involving unfair labor practices are reviewable in the appellate court. *Kane County*, 116 Ill. 2d at 209, 507 N.E.2d at 490-91. The court reasoned that judicial control over labor issues involving probation officers would thus be available as a check on intrusions into those matters reserved to the judicial branch. *Kane County*, 116 Ill. 2d at 209, 507 N.E.2d at 491.

In addition, the court reasoned that the administrative and supervisory powers vested in the courts are not so broad that every detail affecting personnel must be reserved exclusively to the judicial branch. *Kane County*, 116 Ill. 2d at 208, 507 N.E.2d at 491. To a great extent, the three branches of government must be regarded as interdependent and "some blurring of their roles is not only inevitable but also necessary to their smooth functioning." *Kane County*, 116 Ill. 2d at 208, 507 N.E.2d at 491. Put another way, the three branches are " 'parts of a single operating government, and *** the separation of powers clause was not designed to achieve a complete divorce between them.' " *Kane County*, 116 Ill. 2d at 208, 507 N.E.2d at 491, quoting *People v. Reiner*, 6 Ill. 2d 337, 342 (1955). Thus, the court concluded that the inclusion of judicial employees within the Labor Relations Act does not by itself violate the separation of powers principle. *Kane County*, 116 Ill. 2d at 209, 507 N.E.2d at 491.

No reasonable distinction may be drawn between the fundamental facts of this case and those of *Kane County*. In each, the Board attempted to make chief judges subject to the Act in relation to their probation officer employees. Despite the Chief Judge's argument to the contrary, we rely on the supreme court's decision in *Kane County* and conclude that the Chief Judge can be made subject to the Act without running afoul of the constitution.

Resisting this conclusion, the Chief Judge draws our attention to the fact that the *Kane County* court expressly recognized that its decision was a preliminary foray into the field and did not purport to answer all of the questions that could arise under the Act in relation to differing factual situations. *Kane County*, 116 Ill. 2d at 210, 507 N.E.2d at 491. Via this line of argument, the Chief Judge maintains that the supreme court has never addressed the question of whether it could be considered a joint employer of the probation officers and, therefore, *Kane County* is not dispositive.

While the inclusion of judicial employees within the Labor Relations Act does not by itself violate the separation of powers principle (*Kane County*, 116 Ill. 2d at 209, 507 N.E.2d at 491), separation of powers does prevent the application of the Act to persons directly employed by the supreme court. *Administrative Office of the Illinois Courts v. State & Municipal Teamsters, Chauffeurs & Helpers Union*, 167 Ill. 2d 180, 657 N.E.2d 972 (1995). The Chief Judge argues that the supreme court is a joint employer of the probation officers and as such the court's administrative and supervisory authority over the judicial branch will be impermissibly impinged upon if the Board becomes involved with the probation officers' employment relationship.

■ The test for the existence of joint employers is whether two or more employers exercise meaningful control over the same employees such that they share or codetermine those matters governing essential terms and conditions of employment. *Village of Winfield v. Illinois State Labor Relations Board*, 176 Ill. 2d 54, 678 N.E.2d 1041 (1997). Relevant factors to consider are the putative joint employer's role in hiring and firing, promotions and demotions, setting wages and work hours, discipline and actual day-to-day supervision and direction of employees on the job. *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 537 N.E.2d 784 (1989). An important consideration in determining whether a particular entity is an employer is the extent to which that entity is necessary to create an effective bargaining relationship. *County of Will v. Illinois State Labor Relations Board*, 220 Ill. App. 3d 62, 580 N.E.2d 887 (1991).

■ Upon a careful review of the record, it is clear that the Chief Judge maintains such significant constitutional and statutory authority and discretion over the conditions of employment of the probation officer at issue here that he must be determined to be their sole employer for purposes of the Act. For example, the Chief Judge has authority to appoint, discipline and discharge probation officers, subject only to minimum qualification standards set by the AOIC. In addition, the Chief Judge has unfettered authority and discretion to promulgate personnel policies governing work hours, job schedules, vacation and sick leave, work rules and grievance procedures. The Chief Judge is not required to submit any of the personnel policies to the AOIC for review.

Considering the extent of his control over the economic and noneconomic aspects of the probation officers' employment, the Chief Judge is fully capable of engaging in meaningful collective bargaining irrespective of the minimum standards established by the AOIC pertaining to compensation and other matters. Given these circum-

stances, we agree with the Board that, if we construed the supreme court to be an employer of the probation officers simply because the Chief Judge lacks absolute authority over each and every one of their terms and conditions of employment, we would be unnecessarily thwarting this state's public policy of guaranteeing the right of public employees to engage in collective bargaining. Accordingly, we agree with the Board that the AOIC's authority under the Probation Act is of such a secondary nature that it does not mandate a finding that the supreme court is an employer of the probation officers.

Our conclusion on this issue is further supported by the *Orenic* decision upon which the Board expressly relied in its order. In *Orenic*, four chief judges petitioned for a writ of prohibition, seeking to forbid the Labor Relations Board from considering counties as joint employers of court employees. The supreme court issued the writ, relying mainly on the counties' limited role of funding in the employment relationship at issue. However, the court also expressly relied on the separation of powers principle as an additional and independent justification for its decision. The *Orenic* court stated that treating the county boards as joint employers with chief judges of nonjudicial employees would unduly trench on the judicial branch's separate and equal status. *Orenic*, 127 Ill. 2d at 485, 537 N.E.2d at 799.

Of particular significance, the *Orenic* court conceded that traditional labor law principles arguably favored treating the counties as joint employers. *Orenic*, 127 Ill. 2d at 485, 537 N.E.2d at 795. Nevertheless, the court declared that any conflict between such labor law principles and constitutional concerns "must be resolved in favor of the [constitution]." *Orenic*, 127 Ill. 2d at 485, 537 N.E.2d at 799. So too in this case, our obligation to reconcile the Labor Relations Act with fundamental constitutional principles is a distinct and discrete basis for determining that the supreme court should not be construed as a joint employer of the probation officers. Thus, the Board's reliance on *Orenic* is warranted.

■ In the alternative, the Chief Judge argues that the probation officers should be omitted from the Act's coverage because they are managerial employees. "Managerial employees" are excluded from the Act's definition of "public employee" and, hence, have no right to organize and engage in collective bargaining under the Act. 5 ILCS 315/3(n) (West 1998). Based on our careful review of the record, we affirm the Board's determination that the probation officers in this case do not meet the Act's definition of managerial employees.

The Act defines a managerial employee as one who is "engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of management

policies and practices." 5 ILCS 315/3(j) (West 1998). Construing this provision, courts have generally held that managerial employees are those whose predominant activities relate to running an agency or department, such as formulating policy, preparing a budget and overseeing effective and efficient operations. *Village of Elk Grove Village v. Illinois State Labor Relations Board*, 245 Ill. App. 3d 109, 613 N.E.2d 311 (1993) (*Elk Grove Village*).

In this case, the record demonstrated that, even in the aggregate, the myriad of independent decisions that probation officers make on a daily basis do not rise to the level of policy formation. For example, the probation officers have no role in establishing work rules or administrative directives. Moreover, while the probation officers could possibly be construed as aiding in policy development and execution through the exercise of their duties, their activities do not rise to the level of coordination and oversight of policy implementation.

The record indicates that the probation officers' predominant function consists of providing probation services. These services are rendered in adherence to extensive and relatively well-defined guidelines imposed by the Probation Act and the Chief Judge. The fact that the probation officers make independent decisions with regard to carrying out their duties in each individual case does not mean that their actions transcend to the level of executive or management function. Executive function requires more than the exercise of independent judgment. See *Elk Grove Village*, 245 Ill. App. 3d at 121-22, 613 N.E.2d at 320. Furthermore, when an individual's decisions are significantly circumscribed by predetermined requirements and procedures, the employee's activities are not managerial under the Act. *Elk Grove Village*, 245 Ill. App. 3d at 121-22, 613 N.E.2d at 320. Consequently, we affirm the Board's conclusion that the probation officers do not meet the Act's definition of managerial employees.

For the reasons stated above, the decision of the Illinois State Labor Relations Board is affirmed.

Affirmed.

HOLDRIDGE and HOMER, JJ., concur.