THE COUNTY OF COOK (Oak Forest Hospital), Petitioner, v. ILLINOIS LABOR RELATIONS BOARD—LOCAL PANEL *et al.*, Respondents.

First District (3rd Division)   No. 1—03—1622

Opinion filed July 28, 2004.

Vedder, Price, Kaufman & Kammholz, P.C. (Lawrence J. Casazza, Paige O. Barnett, and Joseph K. Mulherin, of counsel), and Richard A. Devine, State's Attorney (Helen J. Kim, Assistant State's Attorney, of counsel), both of Chicago, for petitioner.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for respondent Illinois Labor Relations Board.

Cornfield & Feldman, of Chicago (Jacob Pomeranz, of counsel), for respondent Service Employees International Union, Local 74-HC.

JUSTICE KARNEZIS delivered the opinion of the court:

Petitioner, County of Cook (the County), appeals from an order issued by respondent, the Local Panel of the Illinois Labor Relations Board (ILRB), regarding the collective bargaining rights of attending physicians (attendings) employed by Oak Forest Hospital (the hospital), a hospital operated by the County. The ILRB determined that the attendings are not managerial employees pursuant to section 3(j) of the Illinois Public Labor Relations Act (the Act) (5 ILCS 315/3(j) (West 2002)) and that the attendings in the hospital's department of rehabilitative medicine (rehabilitation attendings) are also not supervisory employees under section 3(r) of the Act (5 ILCS 315/3(r) (West 2002)). As a result, pursuant to the Act, both the attendings and rehabilitation attendings were eligible to participate in collective bargaining and to vote on the election of respondent Service Employees International Union—Local 74-HC (the union) as their collective bargaining representative.

The County argues on appeal that the ILRB erred in its determinations because (1) the attendings engaged predominantly in executive and managerial functions and were, therefore, managerial employees

pursuant to section 3(j); and (2) the rehabilitation attendings, in addition to being managerial employees, were supervisory employees pursuant to section 3(r) based on their direction and evaluation of the residents in their department. We affirm.

## Background

In April 2002, the union filed a representation/certification petition with the ILRB seeking to represent a bargaining unit of all full- and regular part-time attending physicians employed by the County at the hospital. The petition also concerned three outlying clinics but the ILRB's findings regarding the clinics are not at issue here. The County opposed the petition, arguing that the attendings were managerial or supervisory employees within the meaning of the Act and should be excluded from collective bargaining. An eight-day hearing was held before an administrative law judge (ALJ). The parties stipulated that the hospital is a public employer and that the attendings are professional employees within the meaning of the Act. The parties also stipulated that certain individuals, including the hospital's chief operating officer, its medical director, its director of oncology, its chief of dentistry and the chairmen of the hospital's medical administration division departments, be excluded from the petitioned-for bargaining unit because they are managerial or supervisory employees under the Act.

The hospital is part of a health care network operated by the Cook County Board of Commissioners (Board) through the Cook County Bureau of Health Services (Bureau). The Bureau's bylaws provide that the Board is responsible for control and management of the hospital's property, funds and operations. Under the bylaws, the Board has the power to amend the Bureau's bylaws; appoint, terminate or modify the medical staff at the hospital; receive and act upon budget recommendations; review and approve finances, costs and charges and general wage and salary increases and decreases; make, amend, repeal or approve overall policies for operation of the hospital; and approve the hospital's medical staff's rules and regulations.

The hospital is comprised of several divisions and managed by a chief operating officer (COO) appointed by the Board. The COO has authority and responsibility for the day-to-day affairs of the hospital, subject to the Bureau's bylaws and authority of the Bureau chief. Pursuant to the bylaws, the COO is responsible for presenting "recommendations" to the Board regarding operations and long-range planning of the hospital and for carrying out the Board's policies and directives. Among other duties, the COO must present contracts and purchase agreements, annual budget recommendations and recom-

mendations from the medical staff regarding staff appointments or termination of clinical privileges to the Board for approval.

One of the hospital divisions is the medical administration division, which is overseen by a medical director, who is appointed by and reports directly to the COO. The medical director works under the direction of the COO in consultation with the medical staff. The medical staff is comprised of all Illinois-licensed doctors of medicine, osteopathy, dentistry and podiatry with hospital privileges and includes approximately 60 physicians, including 48 attendings and 12 department chairs. Attendings are the primary care physicians at the hospital. The departments in the medical administration division are headed by department chairs who report to the medical director and are responsible for the operation of his or her department. One attending in each department is designated to act as that department's chair when the chair is absent, and three medical staff members are elected to serve as president, vice president and secretary/treasurer of the medical staff.

The Bureau's bylaws assign "the overall responsibility for the quality of the professional services provided" within the hospital to the medical staff. The Board gives the medical staff "the responsibility for the preservation and improvement of the quality and efficiency of patient care provided" in the hospital and requires the medical staff to conduct activities to fulfill that responsibility and to adopt medical staff bylaws, as approved by the Board. The medical staff bylaws state that the medical staff is "responsible for the quality of medical care in the Hospital and accepts and discharges this responsibility subject to the ultimate authority of the Board of Commissioners of Cook County." Pursuant to those bylaws, the medical staff's purposes include initiating and maintaining rules and regulations for the governance of the medical staff and providing a means through which it may participate in the hospital's policy-making and planning process and discuss issues concerning the medical staff and the hospital with the Board, the Bureau chief and the COO.

The medical staff bylaws provide for department and hospital-wide committees set up to carry out the medical staff's responsibilities. Attendings are expected to serve on at least one committee and most do so. Only four attendings serve on no committee. Few of the committees meet more than once a month and some meet for as little as a half hour every two to three months, as needed. Committee decisions are reached by consensus among the committee members and, if consensus cannot be reached, a formal vote is taken. A committee's recommendations are presented to the medical executive committee for its review. If approved, the medical executive committee submits

the recommendation to the COO and joint conference committee for review. The joint conference committee, which is composed of representatives from the Board, hospital administration and medical staff, acts as "a medical administrative liaison committee and an official point of contact" between the Board, medical staff and COO.

Attendings are expected to attend at least two of the quarterly medical staff meetings each year and 50% of their department's meetings, both the monthly, hour-long, all-staff meeting and the thrice weekly, half-hour, attendings-only meeting. Decisions reached at the all-staff meetings are submitted to the medical director and medical executive committee, and those reached during the attendings-only meetings are submitted to the medical director and the COO. Attendings typically spend 10% of their work time engaged in committee and department meeting activities.

The County asserted that the attendings' committee activities, their participation in department meetings and their development of individual patient-care treatment plans by which they issue orders and direct other hospital personnel are evidence of their managerial status. The ALJ determined that the attendings' work in department and committee meetings was executive and management decisions but that the attendings' decision making in the meetings was not final or independent and did not constitute a predominant part of their activity because patient-care duties took from 50% to 95% of the attendings' working time. As a result, the ALJ found that, although the attendings did direct the effectuation of management policies and procedures, they did not meet the Act's definition of managerial employees because they were not engaged predominantly in executive and management functions.

The County also argued that the rehabilitation attendings, in addition to being managerial employees, acted as supervisors of the residents working in the rehabilitation department. The ALJ determined that the rehabilitation attendings did not have the supervisory authority to discipline the residents in their department or to effectively recommend such discipline and that their direction of the residents did not amount to the authority to substantially affect the residents' terms and working conditions. As a result, the ALJ found that the rehabilitation attendings did not exercise supervisory authority over the residents in their department, let alone for a preponderance of their work time as required under the Act, and that they were, therefore, not supervisors. Based on these findings, the ALJ recommended that all full- and regular part-time attendings employed by the County at the hospital, excluding the attendings previously stipulated to as being managers and supervisors, be eligible to vote on representation by the union and that an election be ordered.

The County filed exceptions to the ALJ's recommended decision and order, and the ILRB heard oral argument. The ILRB accepted the ALJ's recommendation. Following an election, the ILRB certified that the union was the exclusive representative of the salient attendings for the purposes of collective bargaining with respect to pay, wages, hours of employment and other conditions of employment.

The County filed a petition for review of the ILRB's order with this court. The Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2002)) governs judicial review of the ILRB's decision and extends to all questions of law and fact presented by the record. 5 ILCS 315/9(i) (West 2002); *Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board*, 319 Ill. App. 3d 729, 736, 745 N.E.2d 647, 653 (2001). Given that the ILRB's certification order is a final administrative decision pursuant to section 9(i) of the Act (5 ILCS 315/9(i) (West 2002)), we have jurisdiction over the County's timely appeal pursuant section 3—113(a) of the Administrative Review Law (735 ILCS 5/3—113(a) (West 2002)). *National Union of Hospital & Health Care Employees, American Federation of State, County & Municipal Employees v. County of Cook*, 295 Ill. App. 3d 1012, 1015, 692 N.E.2d 1253, 1254 (1998).

## Managerial Employees

■ The ILRB determined that the attendings at issue are not managerial employees under the Act and are, therefore, eligible to participate in collective bargaining. The County argues that the ILRB applied the wrong standard in determining the attendings' managerial status by (1) requiring the attendings to possess final authority in recommending or controlling hospital policy; (2) finding the attendings' patient-care duties are separate from their managerial duties; and (3) finding that the attendings do not spend a predominant amount of their time performing their managerial duties. The County does not contest the ILRB's factual findings. Rather, the question is whether the facts satisfy the statutory standard and the ILRB applied that standard correctly. Accordingly, we are presented with a mixed question of law and fact, which we review under the "clearly erroneous" standard. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391, 395, 763 N.E.2d 272, 279, 282 (2001), citing *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998). An agency decision will be deemed clearly erroneous only where, after reviewing the entire record, the court is " 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395, 763 N.E.2d at 282, quoting *United States v. United States*

*Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948); accord *County of Cook v. Illinois Labor Relations Board Local Panel*, 347 Ill. App. 3d 538, 551, 807 N.E.2d 613, 624 (2004).

■ Pursuant to the Act, public employees may join unions and be represented by a union for the purpose of collective bargaining. 5 ILCS 315/2 (West 2002); *Village of Elk Grove Village v. Illinois State Labor Relations Board*, 245 Ill. App. 3d 109, 115, 613 N.E.2d 311, 316 (1993). The Act defines a "public employee" as "any individual employed by a public employer, \*\*\* excluding all of the following: \*\*\* managerial employees; \*\*\* confidential employees; \*\*\* and supervisors except as provided in this Act." 5 ILCS 315/3(n) (West 2002). Consequently, if the attendings are managerial employees under the Act, they are excluded from participating in collective bargaining. The Act's managerial exclusion "is intended to maintain the distinction between management and labor and to provide the employer with undivided loyalty from its representatives in management." *Chief Judge of the Sixteenth Judicial Circuit v. Illinois State Labor Relations Board*, 178 Ill. 2d 333, 339, 687 N.E.2d 795, 797 (1997).

■ Section 3(j) of the Act defines a managerial employee as "an individual who is engaged *predominantly* in executive and management functions and is charged with the responsibility of directing the effectuation of management policies and practices." (Emphasis added.) 5 ILCS 315/3(j) (West 2002). The ILRB developed a two-part test for determining whether an employee is a managerial employee: (1) "the employee must be predominantly engaged in executive and management functions" and (2) "the employee must exercise responsibility for directing the effectuation of management polices and procedures." *City of Evanston v. Illinois State Labor Relations Board*, 227 Ill. App. 3d 955, 974, 592 N.E.2d 415, 427 (1992).

"[E]xecutive and management functions specifically relate to the running of the agency or department, including the establishment of policies and procedures, preparation of the budget, and responsibility that the agency or department operates effectively and efficiently." *Department of Central Management Services v. Illinois State Labor Relations Board*, 278 Ill. App. 3d 79, 87, 662 N.E.2d 131, 136 (1996). Accordingly, meeting the first part of the test requires more than the exercise of professional discretion and technical expertise. *Department of Central Management Services*, 278 Ill. App. 3d at 87, 662 N.E.2d at 136. Rather, "[t]he employee must possess and exercise authority and discretion which broadly effects [*sic*] a department's goals and means of achieving its goals." *Department of Central Management Services*, 278 Ill. App. 3d at 87, 662 N.E.2d at 136. The second part of the test is met "when an individual oversees or coordinates policy implementa-

tion through development of means and methods of achieving policy objectives, determines the extent to which the objectives will be achieved, and is empowered with a substantial amount of discretion to determine how policies will be effected." *Department of Central Management Services*, 278 Ill. App. 3d at 87, 662 N.E.2d at 137. The fact that employees make independent decisions with regard to carrying out their duties does not mean that their actions transcend to the level of executive or management function. *Chief Judge of the Eighteenth Judicial Circuit v. Illinois State Labor Relations Board*, 311 Ill. App. 3d 808, 815, 726 N.E.2d 147, 152 (2000). "If the employee's role is advisory or subordinate, the employee is not a managerial employee because it is the final responsibility and independent authority to establish and effectuate policy that determines management status." *Department of Central Management Services*, 278 Ill. App. 3d at 87, 662 N.E.2d at 136-37. "[G]iven the concern for divided loyalty between employer and union, 'the relevant consideration is effective recommendation or control rather than final authority' over employer policy." *Chief Judge of the Sixteenth Judicial Circuit*, 178 Ill. 2d at 339-40, 687 N.E.2d at 798, quoting *National Labor Relations Board v. Yeshiva University*, 444 U.S. 672, 683 n.17, 63 L. Ed. 2d 115, 126 n.17, 100 S. Ct. 856, 863 n.17 (1980).[1] We find the ILRB's determination that the attendings are not managerial employees is not clearly erroneous.

There is some evidence that the attendings' activities on the committees and in the department meetings could constitute performance of executive and management functions. However, an element to be considered in determining an employee's managerial status is whether his "policymaking role is advisory or subordinate, since 'it is the final responsibility and independent authority to establish and effectuate policy that determines managerial status under the Act.' " *Village of Elk Grove Village*, 245 Ill. App. 3d at 122, 613 N.E.2d at 320, quoting

---

[1]As our supreme court noted, the managerial exclusion in the Act was adopted from decisions of the National Labor Relations Board and the United States Supreme Court, and the Supreme Court's application of the managerial exclusion provides guidance to our analysis of the exclusion. *Chief Judge of the Sixteenth Judicial Circuit*, 178 Ill. 2d at 339, 687 N.E.2d at 797, citing *Yeshiva*, 444 U.S. 672, 63 L. Ed. 2d 115, 100 S. Ct. 856, and *National Labor Relations Board v. Bell Aerospace Co. Division of Textron, Inc.*, 416 U.S. 267, 40 L. Ed. 2d 134, 94 S. Ct. 1757 (1974). However, the Act's definition is narrower than the Supreme Court's, adding the requirement that the employee be engaged *predominantly* in executive and management functions (5 ILCS 315/3(j) (West 2002)) and the federal cases are, therefore, of limited use in determining whether the attendings are managerial employees under the Act.

*City of Evanston*, 227 Ill. App. 3d at 975. Although "effective recommendation or control rather than final authority" over employer policy is the relevant consideration, the employee must still " ' "formulate and effectuate management policies by expressing and making operative the decisions of their employer." ' " *Chief Judge of the Sixteenth Judicial Circuit*, 178 Ill. 2d at 340, 687 N.E.2d at 798, quoting *National Labor Relations Board v. Bell Aerospace Co., Division of Textron, Inc.*, 416 U.S. 267, 288, 40 L. Ed. 2d 134, 150, 94 S. Ct. 1757, 1768 (1974). Such is not the case with the attendings here.

The attendings' role on the committees and in department meetings is merely advisory. The recommendations resulting from the attendings' participation in the committee and department meetings are not implemented as a matter of course. Depending on whether a recommendation originated from a committee or a department and from which committee, it is subject to review and possible veto by the medical director, the COO, the medical executive committee, the joint conference committee and/or, in many instances, the Board. Ultimately, the Board is responsible for assessing all recommendations from the Bureau chief, the COO and the medical director/chief medical officer. In no way do the attendings have the authority to "make operative" the policies of the hospital. They can recommend policies but they cannot institute polices without approval of those recommendations by others. As Madhu Malhotra, M.D., the medical director, testified, attendings can take any policy recommendation to various people, such as herself or the president of the medical staff, but only then can "further action[ ] be taken" on the recommendation. Moreover, Joyce Gertzen, M.D., the chair of the department of medicine, testified that attendings limit their input to matters concerning attendings.

Although managerial status is not limited to only the highest levels of the governmental entity (*Salaried Employees of North America (SENA) v. Illinois Local Labor Relations Board*, 202 Ill. App. 3d 1013, 1021, 560 N.E.2d 926, 932 (1990), quoting *Board of Regents of the Regency Universities System v. Illinois Educational Labor Relations Board*, 166 Ill. App. 3d 730, 742, 520 N.E.2d 1150, 1158 (1988)), it does require sufficient independent authority and discretion to broadly effect a department's goals or means of achieving its goals (*Village of Elk Grove Village*, 245 Ill. App. 3d at 122, 613 N.E.2d at 320; *City of Evanston*, 227 Ill. App. 3d at 975, 592 N.E.2d at 428). Here, the only discretion the attendings exercise is in providing patient care and results from their professional and technical expertise. They have no independent authority to do anything besides practice medicine, let alone the authority to broadly effect a department's or the hospital's goals.

The evidence shows that, even though a majority of the attendings' recommendations are ultimately accepted and implemented, it is not without a thorough examination through a many-layered approval process. First, a committee or department must reach consensus on an attendings' suggestion. Second, if consensus is reached, a recommendation is forwarded for review, revision and possible approval to the medical director, the COO or the medical executive committee and, in many cases, all three. For example, Dr. Gertzen testified that Dr. Malhotra must approve all proposed department policies, including department staffing, and, on occasion, Dr. Malhotra has revised a recommendation and sent it back to the department or committee, which then accepts her changes. Third, depending on the subject of the recommendation, if approved it may be implemented (usually limited to recommendations with department-only impact) or forwarded on to the joint conference committee (recommendations with hospital-wide impact). Lastly, the Board must approve many of the recommendations, including any affecting medical staff rules and regulations, appointment or termination of medical staff, budget, finances and overall policies for operation of the hospital. Recommendations originating from the committee and department meetings are not approved as a matter of course. Consequently, the attendings do not have the power of "effective recommendation or control," as shown by the significant lack of independent authority, as well as a lack of final authority, to effect goals or means of achieving those goals and their role in running the departments and hospital is clearly advisory rather than managerial.

Assuming *arguendo* that the attendings' work on the committees and in the department meetings does constitute performance of executive and management functions, the attendings do not engage *predominantly* in such executive and management functions as required for exclusion under the Act. The evidence shows that, typically, the committees meet once a month, if that, and the two types of department meetings, although held more often, generally last only half an hour to one hour and attendings appear to spend approximately 10% of their work time on committee and department meeting activities.[2] Attending Dr. Jahan serves on four committees and 90% to 95% of her work time is engaged in providing direct patient care. Attending Dr. George serves on three committees and 90% of his work time is engaged in patient care. Attending Dr. Jolepalem testified that he is on two committees and devotes 95% of his work time to direct patient

---

[2]The parties stipulated that the testifying attendings were representative of the proposed bargaining unit as a whole.

care. Attending Dr. Mirza serves on no committees and 99% of her work time is spent on direct patient care. Attending Dr. Begum serves on no committees and spends 90% of her work time in patient care. Rehabilitation attending Dr. Neerukonda has assumed some of the duties of her absent department chair yet still spends 75% of her time on providing direct patient care. Prior to assuming the chair duties, she served on two committees and spent 90% of her time in patient care. Senior attending Dr. Makar serves on five committees and spends 75% of his work time on patient-care activities. Attending Dr. Ashenhurst is the aberration, spending only 50% of her work time on patient care, in the form of hematology consultations. However, the remaining 50% of her work time is primarily devoted to staffing the employee health service rather than to committee and department work.

As the testimony shows, the attendings engage predominantly in activities related to patient care. Even though patient-care activities include issuing orders regarding medication, treatment and therapy and directing nurses and other support personnel, they do not constitute executive or management functions. The attendings are merely exercising their "professional discretion and technical expertise" in order to provide the best care for their patients. We do not find, as the County argues, that the attendings' direction of patient care "encompasses innumerable responsibilities and functions normally not handled by physicians" such that their patient-care duties are not separate from their management duties. In providing patient care, the attendings are not doing anything different from similarly situated attendings in other hospitals. The evidence does not show, as the County asserts, that the hospital's bylaws endow the attendings with "particular patient care responsibilities different from any other doctor's routine practice of medicine." The attendings' patient-care responsibilities are the same as any other doctor's. As the attendings do here, all doctors routinely perform their patient-care responsibilities in the best interest of the patient, within a framework of rules, regulations, policies and budget constraints. The fact that the attendings have some input into those policies through their work in the committee and department meetings does not change the fact that, in performing their patient-care activities, their decisions are significantly circumscribed by predetermined requirements and procedures established by the hospital, the Bureau and the Board.

The attendings' patient-care activities do nothing to "run" their department, to set the department's goals, to establish and effectuate policies or procedures, to determine hours, wages and schedules or to create budgets. As Drs. Jolepalem, Begum, Jahan, Mirza and Neerukonda testified, attendings have no role in scheduling support

staff such as nurses and technicians, choosing patients, setting fees and hours, buying equipment or setting budgets. As several attendings testified, it is up to each attending to determine how he or she practices medicine within guidelines suggested by the hospital, although they may exercise their professional discretion to vary their treatment plans if absolutely necessary.

Attendings work in treatment teams with support staff such as nurses and technicians. However, the attendings' direction of the support staff does not amount to performance of a managerial or executive function. It is no more than the exercise of the attendings' professional discretion and technical expertise in aid of providing the best patient care. As the head of the team, an attending must determine the best course of treatment and issue treatment orders to that effect. Although nurses and technicians carry out treatment orders, typically such orders are written into a patient's chart and a nurse or technician then carries them out as predetermined by his or her own scheduling, training and supervisory lines of authority. As several of the attendings testified, an attending cannot select a particular nurse to carry out an order and cannot schedule a nurse or order him to stay overtime. The support staff have their own lines of authority, and if an attending has a complaint about a nurse or technician, he must report that to the nurse's supervisor. Although an attending has the final decision and ultimate responsibility regarding patient care, she cannot overrule a technician or social worker; only recommend a treatment plan and, if the plan is not followed, pursue the issue with the support person's supervisor. The Board did not err in finding that the attendings' discretionary patient-care actions are not executive and managerial activities. Accordingly, since the attendings engage predominantly in patient care, the ILRB was correct in finding that the attendings are not managerial employees on this basis.

The County lastly asserts that the attendings are managerial employees as a matter of law. Traditionally, whether an employee met the definition of managerial depended on a fact-based analysis that emphasized the particular duties of the individual employees. *American Federation of State, County & Municipal Employees v. Illinois State Labor Relations Board*, 333 Ill. App. 3d 177, 185, 775 N.E.2d 1029, 1034 (2002). Then, in 1995, our supreme court determined that public employees could be managerial employees as a matter of law. *Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board*, 166 Ill. 2d 296, 305, 652 N.E.2d 301, 305 (1995), followed in *Chief Judge of the Sixteenth Judicial District*, 178 Ill. 2d 333, 687 N.E.2d 795. However, our supreme court limited application of the "managerial as a matter of law doctrine" to publicly employed at-

torneys whose activities are specifically circumscribed by statute such that their statutorily defined duties, in effect, cause them to be the surrogates for their employers, the officeholder under whom they serve. *Chief Judge of the Sixteenth Judicial District*, 178 Ill. 2d at 347, 687 N.E.2d at 801 (assistant public defenders); *Office of the Cook County State's Attorney*, 166 Ill. 2d 296, 652 N.E.2d 301 (assistant State's Attorneys); see also *American Federation of State, County & Municipal Employees*, 333 Ill. App. 3d 177, 775 N.E.2d 1029 (2002) (assistant state appellate defenders); *Salaried Employees of North America*, 202 Ill. App. 3d 1013, 560 N.E.2d 926 (attorneys employed by City of Chicago law department).

Patient care is the business of the hospital, and, in attending to the needs of patients, the hospital's customers, the attendings are acting in the interest of their employer and making decisions on behalf of their employer. *National Labor Relations Board v. Health Care & Retirement Corp. of America*, 511 U.S. 571, 577, 128 L. Ed. 2d 586, 594, 114 S. Ct. 1778, 1782 (1994). However, the attendings are not surrogates for the Board, the County or the hospital such that their interests cannot be separated from those of their employer. See *Salaried Employees of North America*, 202 Ill. App. 3d at 1022, 560 N.E.2d at 932, citing *Yeshiva*, 444 U.S. at 688, 63 L. Ed. 2d at 129, 100 S. Ct. at 865. It is not the case that the hospital functions "as a single cohesive unit in which tasks are assigned in a team fashion without any concern for, or recognition of, a formal management/union division between [the attendings]" such that it could not operate efficiently if divided into union/nonunion attendings. *Salaried Employees of North America*, 202 Ill. App. 3d at 1022, 560 N.E.2d at 933. Unlike the publicly employed attorneys, the attendings do not exercise a "tremendous amount of discretion" on behalf of their employer. *Salaried Employees of North America*, 202 Ill. App. 3d at 1023, 560 N.E.2d at 933. Even putting aside the fact that the attendings do not represent the office of a particular person, such as the State's Attorney, it is clear that they do not " 'exercise some portion of the sovereign power' " of their employer, possess the power of their employer " 'in the same manner and to the same effect' " as their employer and are not " 'clothed with all the powers and privileges' " of their employer. *Office of the Cook County State's Attorney*, 166 Ill. 2d at 303-04, 652 N.E.2d at 304, quoting *People v. Tobias*, 125 Ill. App. 3d 234, 242 (1984), and *People v. Nohas*, 9 Ill. App. 3d 570, 575 (1973), respectively. Accordingly, unlike the publicly employed attorneys, allowing the attendings to participate in collective bargaining will not require them to divide their loyalty between their employer and the collective bargaining unit. We find the Board's application of the traditional

fact-finding analysis to be correct. Accordingly, the Board's determination that the attendings are not managerial employees subject to exclusion from collective bargaining is not clearly erroneous.

## Supervisory Employees

The County also argues that the ILRB's determination that the rehabilitation attendings are not supervisors within the meaning of section 3(r) of the Act is against the manifest weight of the evidence. The ILRB affirmed the ALJ's finding that the rehabilitation attendings are not supervisors without comment in a footnote of its decision. Accordingly, we are left with the ALJ's findings to consider. The ALJ determined that the rehabilitation attendings were not supervisors because he disagreed with the County's argument that the rehabilitation attendings have the supervisory authority to direct and discipline the residents. The County contests this finding, arguing that (1) the ALJ mistakenly believed that in all cases the program director, rather than the rehabilitation attendings, made the final decisions regarding the evaluation and discipline of the residents; and (2) even if the ALJ was correct in this regard, his legal conclusion was wrong because the attendings spend a preponderance of their time assigning, reviewing, monitoring, teaching and instructing the residents. We review this mixed question of law and fact under the clearly erroneous standard. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 391, 395, 763 N.E.2d at 279, 282.

The Act excludes supervisors from participation in the same collective bargaining units as nonsupervisors in order to ensure employers that ' 'pro-union bias will not impair the supervisor's ability to apply the employer's policies to subordinates according to the employer's best interests.' '' *Chief Judge v. American Federation of State, County & Municipal Employees*, 153 Ill. 2d 508, 515, 607 N.E.2d 182, 186 (1992), quoting *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 506, 554 N.E.2d 155, 159 (1990). The Act seeks "to avoid the conflict of interest which arises when supervisors, who must apply the employer's policies to subordinates, are subject to control by the same union representing those subordinates." *City of Freeport*, 135 Ill. 2d at 517, 554 N.E.2d at 164. "The potential for a conflict of interest lies in the supervisor's *authority* to influence or control personnel decisions in areas most likely to affect the employment of subordinates and, thus, most likely to fall within the scope of union representation." (Emphasis in original.) *City of Freeport*, 135 Ill. 2d at 518, 554 N.E.2d at 164.

Section 3(r) of the Act, in relevant part, defines a "supervisor" as:

"an employee [1] whose principal work is substantially different from that of his or her subordinates and [2] who has authority, *in the interest of the employer*, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions, [3] if the exercise of that authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. [4] Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising that authority, State supervisors notwithstanding." (Emphasis added.) 5 ILCS 315/3(r) (West 2002).

In order to be deemed a supervisor, an employee must meet all four parts of the Act's supervisory definition. *Chief Judge*, 153 Ill. 2d at 515, 607 N.E.2d at 186. Performance of any one of the 11 indicia of supervisory authority stated in the second prong of the definition, accompanied by independent judgment, is sufficient to support a finding of supervisory status. *National Union of Hospital & Health Care Employees*, 295 Ill. App. 3d at 1021, 692 N.E.2d at 1258, citing *Chief Judge*, 153 Ill. 2d at 516, 607 N.E.2d at 186. "Independent judgment" means that "the employee makes choices between two or more significant courses of action without substantial review by superiors." *National Union of Hospital & Health Care Employees*, 295 Ill. App. 3d at 1021, 692 N.E.2d at 1258, citing *Chief Judge*, 153 Ill. 2d at 516, 607 N.E.2d at 186.[3]

■ The union's failure to contest the ILRB's affirmance of the ALJ's finding that the rehabilitation attendings' principal work is substantially different from the residents' and its stipulation that attendings are professional employees, defined in the Act as any employee engaged in work that is "predominantly intellectual and varied in character rather than routine *** [and] involving the consistent exercise of discretion and adjustment in its performance" (5 ILCS 315/3(m) (West 2002)), admits that the rehabilitation attendings satisfy the first and third prongs of the definition. The question, therefore, is whether the rehabilitation attendings meet the second prong of the definition, whether they have the "authority, in the inter-

---

[3]The National Labor Relations Act (NLRA) (29 U.S.C. § 151 *et seq.* (2000)) excludes supervisors from collective bargaining units for the same conflict of interest reasons as the Act. *City of Freeport*, 135 Ill. 2d at 506, 554 N.E.2d at 159. However, since the Act's definition of supervisor is narrower than the NLRA's, federal precedent is only of limited use in determining whether an employee's activities are supervisory under the Act. *City of Freeport*, 135 Ill. 2d at 506-07, 554 N.E.2d at 159.

est of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions." 5 ILCS 315/ 3(r) (West 2002). Given that the County only argues that the rehabilitation attendings have the supervisory authority to "discipline" and "direct" the residents and to "effectively recommend such action," we will confine ourselves to an examination of those indicia of supervisory authority and need not discuss the other nine indicia stated in section 3(r) of the Act. Only if the rehabilitation attendings have such supervisory authority will we address the last prong of the definition, whether they devote a preponderance of their employment time to exercising that authority.

The ALJ found that the rehabilitation attendings' role in disciplining residents does not rise to the level of supervisory authority because they do not have the authority to impose or formally recommend any disciplinary action be taken against a resident. The ALJ determined that, although a rehabilitation attending may complain to the residency program chair/director about a resident's behavior, it is the chair/director who will determine whether any remedial action or discipline should be imposed on a resident, and then only after conducting an independent inquiry and speaking with the resident. The evidence bears out this finding.

Residents in the rehabilitation department perform two-month rotations through the department under a contract the hospital has with Rush-Presbyterian-St. Luke's Hospital (Rush). The residents are in residency at Rush and are employed by Rush. They are paid by Rush, although the County reimburses Rush for the residents' time at the hospital. While at the hospital, residents are assigned to a rehabilitation attending for instruction and evaluation. Dr. Neerukonda, a rehabilitation attending, testified that she has the authority to verbally reprimand a resident regarding patient care or treatment of coworkers in order to ensure that the best possible patient care is provided. However, she also stated that, other than patient care, she has no control over the residents. Dr. Neerukonda testified that she performs an evaluation at the end of a resident's rotation. She considered the evaluation "additional information" and could recommend discipline therein but did not know what impact her evaluation had on a resident's progress in the residency program.

Theresa McCarthy, M.D., chair of the rehabilitation department, testified that, at the end of the two-month rotation, a "supervising" rehabilitation attending evaluates the resident in his charge. The evaluation is submitted to the director of the residency program at Rush. Dr. McCarthy meets monthly with the program staff at Rush to

discuss the residents working in her department and brings up any issues she has at those meetings. However, Dr. McCarthy can only provide input. Discipline decisions are up to the Rush program chair who, after hearing any issues raised by Dr. McCarthy or in an evaluation, meets individually with the resident to discuss those issues. Dr. McCarthy testified that, although a rehabilitation attending's evaluation is considered "highly" because a resident must successfully complete the rehabilitation rotation in order to progress in residency, it is the Rush department chair who determines how a resident progresses. She stated that a resident is put on probation or terminated on the basis of a "multitude" of evaluations, not just the one from the rehabilitation attending. The program chair makes an independent inquiry into any disciplinary recommendations; discusses the evaluations with the resident; and, if a problem exists, may decide to put the resident on probation, extend his residency or remove him from the program. Clearly Dr. McCarthy, let alone a rehabilitation attending, cannot discipline a resident or effectively recommend such discipline since her recommendations regarding discipline are not adopted as a matter of course by the Rush program chair. The ALJ's finding that the rehabilitation attendings do not have the supervisory authority to discipline or effectively recommend discipline of a resident is not clearly erroneous. Consequently, the Board's affirmance of that determination is not clearly erroneous.

The ALJ also found that the rehabilitation attendings' direction of the residents does not rise to the level of supervisory authority. It is uncontested that the rehabilitation attendings direct the residents by assigning the residents patient-care duties, instructing and teaching them how to perform those duties and reviewing and monitoring the residents' work. However, such direction must be performed "in the interest of the employer." 5 ILCS 315/3(r) (West 2002). The rehabilitation attendings direct the residents in order to provide good patient care and are, therefore, performing this direction in the interest of their employer to a certain extent. However, the ALJ found that the rehabilitation attendings' authority to direct residents is not supervisory direction within the meaning of the Act because, absent an ability to discipline or make an effective disciplinary recommendation, a rehabilitation attending has no authority to affect the residents' terms and working conditions, i.e., areas likely to fall within the scope of union representation, such as wages, discipline, transfer, promotion, hire or other working conditions. We agree.

As stated previously, it is the conflict of interest created by the "supervisor's *authority* to influence or control personnel decisions in areas most likely to affect the employment of subordinates and, thus,

most likely to fall within the scope of union representation'' which the Act seeks to avoid by excluding supervisors from collective bargaining in the same unit as their subordinates. (Emphasis in original.) *City of Freeport*, 135 Ill. 2d at 518, 554 N.E.2d at 164. Accordingly, the ALJ's and, necessarily, the ILRB's interpretation of the statute as requiring that the attendings' direction affect the residents' terms and working conditions, areas likely to fall within the scope of union representation, is entirely in line with the purpose of the Act. The attendings' direction of the residents must be in the interest of their employer in areas which are likely to be addressed by union representation, areas in which the interests of the employer and the employees are likely to diverge and a conflict of interest created. Such is not the case. Notwithstanding that the business of the attendings is the same as the hospital's, to provide the best patient care, any direction the rehabilitation attendings give the residents in assigning, instructing, monitoring and evaluating them during their rotation derives from the attendings' superior skill, experience and technical expertise and such direction, therefore, does not require the use of independent judgment ''in the interest of the employer'' as required by the Act. See *City of Freeport*, 135 Ill. 2d at 532, 554 N.E.2d at 171 (supreme court held that fire lieutenants' direction of firefighters at fire scene is solely derived from lieutenants' superior skill, experience and technical expertise and does not require use of independent judgment in the interest of the employer).

In *National Union of Hospital & Health Care Employees*, 295 Ill. App. 3d 1012, 692 N.E.2d 1253, the court determined that the attendings at Cook County Hospital (Cook County) were supervisors under the Act because they directed the residents at Cook County. We find *National Union of Hospital & Health Care Employees* distinguishable. The residents at Cook County are employed by Cook County and their residency program is at Cook County while the residents here are employed by Rush, not the hospital, and their residency program is at Rush. At Cook County, the attendings dominate the committees overseeing the residency program and their recommendations regarding residents are generally followed. As a result, the court found that the attendings have the authority to discipline, promote, demote and discharge the residents. In contrast, as previously discussed, all such direction activities in the case at bar are performed by the residency program staff at Rush. Unlike the Cook County attendings, the rehabilitation attendings have no say in recruitment and hiring of residents, scheduling them, approving their breaks and time off, disciplining them or deciding their progress in the residency. The only areas in which the rehabilitation attendings have the authority to

direct the residents do not concern areas which might fall within the scope of union representation. The only time a rehabilitation attending may possibly impact a resident's term or working conditions is when he writes a negative evaluation and recommends discipline, but even then, the final decision as to such discipline is made by the Rush program chair after he has looked into the matter independently. Accordingly, the Board's affirmance of the ALJ's determination that the rehabilitation attendings do not have the supervisory authority to direct residents as required under the Act is not clearly erroneous. Because the ALJ's and the ILRB's findings that the rehabilitation attendings do not have the supervisory authority to direct and discipline the residents or effectively recommend such action were not clearly erroneous, the rehabilitation attendings do not meet the second prong of the statutory definition and cannot be supervisory employees under the Act.

For the reasons stated above, we affirm the ILRB's decision.

Affirmed.

SOUTH and HALL, JJ., concur.